SILKMAM, S.
The appraiser in this matter has given the question raised by the appellant careful consideration, and has aided the court with a very well-considered opinion, and the com elusion that there was no equitable conversion intended by decedent is correct.
Appeal dismissed on the opinion of the appraiser, with $10 costs, to be paid by the county treasurer.
The opinion of Mr. Middlebrook, the appraiser, is as follows: This proceeding to determine the question of the amount of the transfer tax to be assessed upon the legacies under Mrs. Cobb’s will involves a construction of the will by the appraiser. It therefore seems proper to submit the reasons for the findings contained in the report filed herewith. It is claimed by the county treasurer that the will works an equitable conversion, and that therefore the entire estate is subject to taxation. While ■ there might be questions raised as to whether, under the will, the legacies are charged upon the testatrix’s real estate (Lupton v. Lupton, 2 Johns. Ch. 623; Hoyt. v. Hoyt, 85 N. Y. 142,149,150; Briggs v. Carroll, 117 N. Y. 288-292; 27 St. Rep. 468; Morris v. Sickly, 133 N. Y. 456; 45 St. Rep. 735; Hogan v. Kavanaugh, 138 N. Y. 417; 52 St. Rep. 884), that question may be eliminated as not being necessary to the determination sought. *507 The questions then remaining are: (1) Did the will work an equitable conversion? And (2) if there be an equitable conversion, does the tax attach? Taking these in order:
.1- “Conversion arises only from an express, clear, and imperative direction, or from a necessary implication of such express direction. The question of conversion is one of intention, and the question is, did the testator intend to have his real estate converted into personalty immediately upon his death? If he did, a court must give such intent effect, and treat the realty as personal property from that time. If, however, he intended to give the executor or trustee under his will a power to convert, leaving it discretionary with him to convert or not, the conversion will depend on the will or discretion of the executor or trustee, and will not be regarded as consummated in law until it is consummated in fact.” Clift v. Moses, 116 N. Y. 144,157; 26 St. Rep. 405. The cases fall into two classes in accordance with the above definition. Those of the first class, where the will contains “an express, clear and imperative direction,” are fairly instanced by Moncrief v. Ross, 50 N. Y. 431, and McDonald v. O’Hara, 144 N. Y. 566; 64 St. Rep. 236, and need no comment. The other class, where the intent to convert is implied, is illustrated by Dodge v. Pond, 23 N. Y. 69; Power v. Cassidy, 79 id. 602; Lent v. Howard, 89 id. 169; and Delafield v. Barlow, 107 id. 535; 12 St. Rep. 494. An examination of these cases show that in each instance the conversion is predicated upon the intent of the testator, as evidencing an imperative direction, implied as necessary to carry out the scheme of the will. It is the intent that governs, and not the practical convenience of treating the decedent’s estate in one form rather than another. "While inquiry into the conditions existing at the time of the making of the will is permitted, it is solely for the purpose of aiding the court in arriving 'at the intent, and convenience and expedience have nothing to do with the solution of the question. 27o express provision being made in the will for a conversion of the realty into personalty, every intendment is antagonistic to such an intention. If such had been the intention, it is to be presumed that apt and appropriate language would have been used to convey it, commanding and directing that this should be done. It would not have been left to be inferred by the use of ambiguous terms or doubtful phraseology, but the will would have contained positive provisions indicating the testator’s intention. In White v. Howard, 46 N. Y. 144, 162, it was laid down by G-rover, J., that, “to constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty of and obligatory upon the trustees to sell it in any ., event. Such conversion rests upon the principle that equity con-'' siders that as done which ought to have been done.” Hobson v. Hale, 95 N. Y. 588, 605. “While the will should be supported if it can be done upon any fair construction of its provisions, this *508 rule has never been carried to such an extent as to hold that an out and out conversion is to be inferred in the absence of imperative directions, expressed or necessarily implied, to the executors to sell the real estate.” Id. 608, 609. The will of Mrs. Cobb is simple, and presents no ambiguity. It contains (1) certain legacies of specific sums, aggregating $3,500 in money; (2) provisions for two trust funds, aggregating $7,000, both of which lapsed by reason of the death of the beneficiaries before the testatrix; (3) a general bequest and devise of the rest, residue, and remainder of her estate, real, personal, and mixed, to four children; (4) a power of sale by the executors. This will was executed November 14, 1885. By codicils executed in 1,890 and 1891 she made a further'bequest of $1,500 and revoked one of $500, so that the total of the legacies and trust funds provided for was $11,500. The legacies amounted at her death to only $4,500, the trusts being eliminated, supra. The inventory of the personal estate shows a total of $5,100. Upon these facts, that the will provides for the distribution of $11,500 as personalty, and that it contains a naked power of sále, and that the inventory shows only $5,100 of personalty, it is-urged in behalf of the county treasurer that there is an equitable conversion. It is difficult to see how this contention can be supported. The language of the will would equally apply to realty and personalty. Id. 598. And, moreover, it seems to recognize the distinction between them by the words employed. The facts are not such as to disclose such an intent to convert on the part of the testatrix An examination of the inventory shows that the par value of the personal estate would be $10,000, and that the depreciation in the securities shown herein has occurred since the making of the will and codicil. It may very well be that testatrix did not change her will in view of the depreciation and consequent shrinking of her personal estate by reason of the fact that the death of the beneficiaries of the $7,000 had produced a lapse of her bequests to that extent. Outside of the will itself there is little evidence to show what was in her mind as pvidencing her intent. There is nothing to indicate but that, at the time of makinh her will, testatrix’s personal estate fully equaled or exceeded $11,500. The rule which might be deduced from McCorn v. McCorn, 100 N. Y. 511, would, therefore,' not apply. The reasoning in Briggs v. Carroll, 117 id.-"288, 292; 27 St. Bep. 468, on the question as to whether a legacy was charged on real estate, would seem to be equally applicable to this case. In that case Judge Binch says: “We are very for from saying that a residuary clause, blending in its form of disposition both real and personal estate, will produce a charge upon the former for the payment of legacies wherever the personal estate proves insufficient. No such doctrine can be justified. The deficiency must exist when the will is executed, and be so great and so obvious as to preclude any possible inference that the testator did *509 not realize it, or that he may have expected and intended before his death to remove the difficulty.” This is especially pertinent in view of the fact that the questions involved herein do not arise independently of the question whether the legacies are charged upon the real estate. Ho such deficiency is shown to have existed at the time of the making of the will as, coupled with the will, would warrant the conclusion that the testatrix intended that her real estate should be converted into personalty, and the consequent implications of an imperative direction to convert. There was, therefore, no conversion as of the date of testatrix’s death. If the executors did sell under the power, the conversion should not be “regarded as consummated in law until it is consummated in fact” (Clift v. Moses, supra), and such sale does not make the proceeds taxable as personalty, the taxation being of the date of the death.
2. It is also our opinion that the estate would not be taxable even if the will did work an equitable conversion of the real estate into personalty. It must be borne in mind that this proceeding is under a statute imposing a tax. That statute must be reasonably strictly construed against the state. It might be seriously doubted if this equitable theory could be recognized at all in a statutory proceeding such as this. But it has been by a surrogate of a remote western county (In re Wheeler’s Estate, 1 Misc. Rep. 450; 51 St. Rep. 513), who says (at pages 455, 456, 1 Misc. Rep., and 51 St. Rep. 513): “It is evident that, if decedent makes such a testamentary disposition of his real estate as to convert it into personalty, the shares of the legatees under such a will are liable.” Satisfactory as his reasons for so holding may have been to him, although they are not disclosed in his opinion, diligent search does not disclose that they have been followed by any other court. Since the publication of that decision the question seems to be necessarily decided by the decision of the court of appeals in Matter of Hoffman, 143 N. Y. 327; 62 St. Rep. 245. This last case calls our attention very sharply to section 22 of the act (Laws 1892, chap. 399), which reads: “The words ‘estate’ and ‘property,’ as used in this act, shall be taken to mean the property or interest therein of the testator * * * specifically exempted from the provisions of this act, and not as the property or interest therein passing or transferred to individual legatees.” The property of the testatrix sought to be reached was real estate, which by section 2 is exempt, in this case. Even if it be converted and be distributed as personalty, “the property or interest therein of the testator” was realty. The conversion does not occur until after the death, and until after the decc- * dent parts with all “estate” ond “property.” It might also be remarked that grave doubt would exists if it ever entered the minds of the legislators by whom this act was passed, vdien they sought to exempt real estate from the operation of the act, that such things as equitable conversions existed; still less, that the *510 courts.would attempt to insert them in the act. The purposes and theory of the exemption of real estate from the tax are apparent. Personality is ordinarily easily converted, and can, therefore, easily respond to such a tax without special hardship. On the other hand, real estate generally is slow of sale, and its conversion is a matter of time and opportunity. A tax on real estate would inevitably work hardships and sacrifice. For it must be borne in mind that the act applies to the remotest rural district as well as to the metropolitan centers. While it might be an easy matter to raise money in the latter on real estate, it is frequently and almost invariably a matter of difficulty, and not infrequently an impossibility, to do so in the former. The fact that probably ninety per cent, of the devises of real estate are to the classes exempt by section 2 of the act would make it all the more evident that the intent of the legislature was to altogether exempt real estate, except as to collaterals, conversion or no conversion.